UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TRAVIS DAY

CIVIL ACTION

VERSUS

NO.   3:17-CV-328-JWD-EWD

CITY OF BATON ROUGE/PARISH OF
EAST BATON ROUGE, ET AL
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendants, THE CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE and

MAYOR SHARON WESTON BROOME (hereinafter referred to as "City/Parish defendants"),

respectfully submit this memorandum in support of their motion for summary judgment which seeks

to dismiss the claims brought by plaintiff Travis Day herein pursuant to Rule 56, Fed. R. Civ. P. and

in support thereof would respectfully show the Court the following:

**FACTS AND PROCEDURAL HISTORY**

On July 9, 2016, plaintiff Travis Day attended protests that were taking place in the Baton

Rouge area as a result of an officer-involved shooting of Alton Sterling.[1]  In the earlier part of that

afternoon, the plaintiff arrived to protest on the corner of Goodwood Avenue and Airline Highway.[2]

Later that afternoon, a group of protestors consisting of members of the New Black Panther Party

(hereafter referred to as NBP group), marched along the southbound double lanes of Airline Hwy.

---

[1] Exhibit A, Deposition of Day, Page 19-20.

[2] Exhibit A, Deposition of Travis Day, Page 20, line 1-11

1

from the direction of Florida Blvd./Cortana Mall.[3]   As a result of the NBP group's actions on Airline Hwy., vehicle traffic became restricted to one lane and cars slowed well under the 50 mph speed limit.[4]   Law enforcement subsequently shutdown the roadway to protect protestors from being hit by traffic and effectively disperse the crowd.[5]   The NBP group stopped on Airline Hwy. near the front of Police Headquarters and spanned across both southbound lanes.[6]   The New Black Panther Party was known to have a history of some violence and several members in the NBP group were armed with shoulder guns and rifles.[7]

Upon seeing the NBP group marching down Airline Hwy, the plaintiff walked over from his original protest location to meet up with the NBP group.[8]   Several non-NBP protestors, including the plaintiff, joined up and/or stood around with the NBP group to support the group's efforts.[9] Plaintiff stood immediately next to and at times behind members of the NBP group who were located

---

[3] Exhibit A, Deposition of Day, Page 23, lines 3-16; page 24, lines 10-19.  Exhibits 1, 2, 3, and 4 Videos from Officer Keith Wilson.

[4] Exhibits 1 and 2, Videos from Officer Keith Wilson. These videos shows traffic moving in one lane slowly along Airline Hwy as the NBP group is marching up.

[5] Exhibit B, Deposition of James Darron Leach, p. 153, lines 5-13

[6] Exhibits 3 and 4, Videos from Officer Keith Wilson

[7] Exhibit B, Deposition of James Darron Leach, p. 55, lines 4-12. Exhibit A, Deposition of Day, Page 25, lines 14-18, Page 29, lines 24-25; Page 30, lines 11-16. Day observed the New Black Panther members armed with "killing guns" in their hands.

[8] Exhibit A, Deposition of Day, Page 23, line 18.

[9] Exhibits 4 and 5, Videos of Officer Keith Wilson.  Plaintiff is seen in Exhibit 5 with a camouflage hat, black tank top and light jeans between the middle and right side of the video and at 0:07, Day can be seen raising his arm up and holding it up for remainder of the video.  Exhibit A, Deposition of Day, p. 23, lines 17-18; p. 26, lines 2-8. Exhibit 6, Video taken by Day at 1:32-2:00. Day can be heard vocalizing his support for the NBP group.  Exhibit A, Deposition of Day, pp. 38-41.

inside of the right travel lane.[10]   The group of protestors became tumultuous and was verbally antagonizing law enforcement officers, who had lined across the roadway to prevent the group from moving forward.[11]   Unsecured guns were being dropped in the street around the NBP group.[12]

As a result of these events, law enforcement deployed several officers to disperse the crowd and clear the street.[13]   Multiple commands were given to protesters to clear the roadway.[14]   Because the crowd failed to disperse, police officers began to arrest illegal protestors who were obstructing the roadway to clear the area.[15]   Despite their initial effort to make isolated arrests of particular illegal protestors, the crowd in and around the roadway, including the plaintiff, refused to disperse.[16]

Thus, members of the Baton Rouge Police Department began moving in to effect additional arrests of illegal protestors.[17]   At this time, the plaintiff was located off the grassy embankment, on the outer part of the right lane of Airline Hwy. standing directly next to the NBP group.[18]   Plaintiff was subsequently shoved to the right by officers making their way to effect arrests within the NBP

---

[10] Exhibit 5, Video filmed by Officer Keith Wilson. Exhibit 6, Video filmed by Travis Day, at 3:11 and 3:37-4:44; Exhibit 7, Video filmed by third party at 0:27-0:30.   Exhibit A, Deposition of Day, p. 44-47.

[11] Exhibit 6, Video filmed by Travis Day, at 1:34-4:44

[12] Exhibit 6, Video filmed by Travis Day, at 7:39.

[13] Exhibit 8 and 9, Video from Officer Darryl Dyer; Exhibit 10, Video by Officer Mindy Stewart.

[14] Exhibit C, Deposition of Doug Barron, p. 72, lines 6-8; Exhibit B, Deposition of James Darron Leach, pp. 155, lines 2-4.   Exhibit D, Deposition of Jared Neyland, p. 70, lines 4-14.

[15] Exhibit B, Deposition of James Darron Leach, pp. 153, lines 5-13.

[16] Exhibit 6, Video of Day, at 5:56-6:63. Exhibit 14, Video from Mindy Stewart.   The arrests in this video were prior to the plaintiff's arrest as demonstrated by the fact that the Mobile Field Force, including Jared Neyland, is first being deployed at 1:04.   Exhibit 11, Video from Officer Andy Desalvo.

[17] Exhibit 11, Video from Officer Andy Desalvo, beginning at 1:43.

[18] Exhibit 11, Video from Officer Andy Desalvo at 1:47-1:52

group.[19]   Rather than leave the immediate area after seeing the officers' attempts to arrest members

in the roadway, the plaintiff maintained his position directly next to illegal protestors spanning across

the roadway.[20]   At this time, Officer Jared Neyland walked up and observed the actions of the

plaintiff.[21]   Officer Neyland then pulled the plaintiff away from the crowd and directed him to his

knees and then to a prone position on the inclined embankment next to the roadway.[22]   Officers then

immediately pulled the plaintiff to the flat portion of the embankment away from the crowd to secure

him with handcuffs.[23]   Once secured in this location, a few officers restrained the plaintiff while

placing him in handcuffs with his arms behind his back.[24]   Officer James Thomas subsequently lifted

up the plaintiff by his arms and escorted him to a transport bus to await arrest processing.[25]

As a result of this incident, the plaintiff was charged for violating LSA-R.S. § 14:97, Simple

Obstruction of a Highway of Commerce. The District Attorney's Office subsequently dismissed the

charges.  Plaintiff filed this case against the above named defendants, seeking damages under state

law and 42 U.S.C. 1983 for (1) false arrest, (2) excessive force, and (3) retaliation in violation of the

First Amendment.

---

[19] Exhibit 11, Video from Officer Andy Desalvo at 1:47-1:52 (plaintiff is in camouflage hat and black tank top standing next to the man in a maroon t-shirt, the shove is depicted at 1:50.  Exhibit A, Deposition of Day, Page 60, lines 11-25; Page 61, lines 1-10

[20] Exhibit 11, Video from Officer Andy Desalvo at at 1:50-1:55.

[21] Id. at 1:51.

[22] Id. At 1:55.

[23] Exhibit 12, Video from Officer Mindy Stewart at 0:07-0:10

[24] Id. At 0:10-0:36. Exhibit 9, Video from Darryl Dyer at 2:14-2:50.

[25] Id. at 0:42-1:01; Exhibit 13, Video from Darryl Dyer at 0:04-0:15.  Day is seen waiting in front of bus doors and no force is been used.  Exhibit 9, Video from Darryl Dyer at 2:50.  Plaintiff's escort is depicted.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 56). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Id.* A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Beck v. Somerset Technologies, Inc.*, 822 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

## APPLICABLE LAW AND ANALYSIS

### Plaintiff's § 1983 Against the City/Parish Should Be Dismissed

Claims against municipal officials in their official capacity are treated as claims against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105 (1985). Municipalities and local governing bodies cannot be held liable under 42 U.S.C. § 1983 based on a theory of respondeat superior. *Rivera v. Houston Ind. School Bd.*, 349 F.3d 244, 247 (5th Cir.2003). However, they can be sued directly under § 1983 for monetary damages when a deprivation of a federally protected right is caused by an action taken pursuant to an official municipal policy adopted and promulgated by that body's officers or resulting from a governmental custom which has not received formal approval through the body's official decision-making channels but nonetheless fairly represents municipal policy. *Monell v. New York City Department of Social Services*, 436 U.S. 658,

98 S.Ct. 2018 (1978); *Palmer v. City of San Antonio, Texas*, 810 F.2d 514 (5th Cir. 1987). To prevail on a municipal liability claim under § 1983, a plaintiff must establish: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff cannot establish an official capacity claim under § 1983 against the City/Parish/Mayor Broome because he has failed to allege, much less substantively demonstrate, an official policy or custom which caused the deprivation of a constitutional right or a policymaker who can be charged with actual or constructive knowledge. In Paragraph 66 of his Second Amended Complaint, the plaintiff alleged de facto and explicit policies and practices employed by BRPD to violate his First and Fourth amendment rights including: A.) racially discriminatory policing, including the targeting of Black citizens with excessive force and unconstitutional arrest and disparate treatment of citizens based on race in matters other than arrest; B.) criminalizing and shaming individuals who criticize law enforcement; C.) the targeting for arrest, detention, abuse, and denigration of perceived protest "leaders" and, in particular, individuals who criticize the police; D.) failing to create and implement policies regarding how to respond constitutionally to mass demonstrations and spontaneous protest; E.) failing to create and implement policies regarding protecting and respecting the exercise of First Amendment rights through assembly and protest; F.) failing to train sworn personnel on the exercise of First Amendment rights through assembly and protest; G.) failing to supervise personnel to ensure that personnel execute their duties in a constitutional manner and without violating the rights of protesting individuals; H.) failing to sufficiently distinguish in written policies regarding "Special Events"and "Civil Disorder" between

unlawful "civil disorder" or "riot,"; I.) the use of riot gear without just cause in order to frighten and intimidate peaceful protestors; J.) failing to discipline sworn personnel who use excessive force, engage in racist policing, prepare false reports, falsely arrest citizens, and/or violate First Amendment rights, thereby creating a culture of impunity in which officers who commit such misconduct learn that they will suffer no adverse consequences; K.) tacitly approving and supporting a police code of silence, whereby officers are expected to protect and shield other officers who are accused of misconduct, such as excessive force, racist policing, preparation of false reports, false arrest of citizens, and/or violations of First and Fourth Amendment rights and other constitutional and statutory rights; L.) allowing a widespread practice of excessive force, directly particularly at Black citizens; M) failing to create and implement policies and failing to train sworn personnel regarding how to identify the crime of Simple Obstruction of a Highway of Commerce and apply the statute in a manner that respects the First Amendment rights of Black citizens and residents of Baton Rouge; N.) failing to create and implement a "street closure" permitting process to enable those who wish to engage in demonstrations on matters of immediate public importance to obtain a permit on an emergency basis (i.e., with waiver of the 45 day notice requirement); and O.) imposing onerous financial conditions on those who seek to engage in protest—e.g., requiring proof of $1 million in liability insurance coverage and a receipt for rental of barricades.

As an initial matter, the plaintiff's municipal liability claims under § 1983 based on City/Parish policies for obtaining a permit for a "street closure" as alleged in sections N and O are without merit because he has not set forth any allegations or evidence to show that he ever tried to obtain or was denied a permit to close a street for protesting purposes. Even if he had been denied a permit, he cannot establish how the enumerated permit requirements caused a violation of his

Constitutional rights.    Thus, the plaintiff cannot establish that the City/Parish permitting policies were the "moving force" behind his alleged claims of First Amendment retaliation, false arrest, and/or excessive force.

A review of the remaining alleged de facto policies demonstrates that the plaintiff cannot satisfy the "official policy" requisite of a *Monell* claim.    An "official policy" for the purposes of § 1983 is defined as either: (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees which although not authorized by officially adopted and promulgated policy is so common and well-settled as to constitute a custom that fairly represents the entity's policy.    *Mills v. City of Bogalusa*, CV 13-5477, 2016 WL 1045977, at *14 (E.D. La. Mar. 16, 2016), citing, *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 289 (5th Cir. 2002).    Sections A - M do not reference any affirmative policy, municipal statement, ordinance, regulation, or decision.    BRPD has implemented policies on how to constitutionally respond to violators of law during protests, including procedures for handling arrest, use of force, and civil disorder.[26]    Plaintiff has not challenged the procedures set forth in those official policies.

Thus, it appears the plaintiff is attempting to establish an "official policy" based on a pattern of misconduct.    To establish a policy based on a pattern of prior incidents the plaintiff must show that the incidents "have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected,

---

[26] Exhibit E, General Order 135, Less-Lethal Force; Exhibit F, General Order 209, Arrests; and Exhibit G, General Order 291, Civil Disorder.

accepted practice of city employees." *Mealey v. Gautreaux*, CV 16-716-JWD-RLB, 2020 WL 515853, at \*19 (M.D. La. Jan. 31, 2020) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) and *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). To establish a pattern, the plaintiff is required to prove a sufficient frequency of similar specific incidents, *Peterson*, 588 F.3d at 85 and *McConney v. City of Houston*, 863 F. 2d 1180, 1184 (5th Cir. 1989). "Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). Plaintiff failed to satisfy this burden and instead relied on conclusory allegations and the inference of the existence of a pattern from his interaction with law enforcement during the July 2016 protests. "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County Texas*, 981 F.2d 245 (5th Cir. 1993).

Although the plaintiff cited historical events of police misconduct in his petition,[27] these allegations do not support his claims because all of the events are readily distinguishable from that presented in this case. Most of the allegations related to race-based officer misconduct in this section of his complaint are speculative opinions of third parties and/or unsupported facts and statistics. The only reference to a BRPD officer-involved incident related to racial prejudice, i.e the racial text message, did not involve any official police action, much less an arrest or use of force during times of public protests or civil unrest. An isolated example of one officer's racial prejudice is insufficient to establish underlying systemic pattern of discriminatory conduct throughout the department. Moreover, a substantive portion of these allegations relate to the policymakers who were not in

---

[27] Record document number 30, Second Amended Complaint, paragraphs 20-41.

charge at the time of the plaintiff's incident.    Plaintiff also cannot demonstrate the requisite frequency to establish a pattern-based policy, since these unique events spanned randomly across a period of over ten years.    Because the plaintiff has no tangible evidence of continuous incidents of officer racial-bias while conducting their official duties during times of public protest under the supervision of one policymaker, his civil rights claim based on an alleged pattern racially discriminatory policing must be dismissed.

Plaintiff subsequently relies on six legal actions over the course of nine years against the BRPD to establish a pattern-based policy of excessive force.    This argument is equally unpersuasive. Plaintiff cannot show that the circumstances surrounding those legal actions were similar to that in the instant case.    None of the legal actions involved a BRPD response to protestors during an illegal mass demonstration.    Nor do these legal actions have the requisite numerosity/regularity to establish a pattern-based policy such that the City/Parish could be attributed with knowledge that excessive force was an accepted practice of BRPD.    "Only three of the six lawsuits took place under the supervision of the Chief of Police employed at the time of the 2016 protests, former Chief Carl Dabadie.    Of those three, only one case resulted in a judicial finding of excessive force.[28]    Sporadic and distinguishable findings of prior excessive force are insufficient to establish a pattern-based "official policy" that could be a moving force of the plaintiff's alleged excessive force claim.

Plaintiff also has no evidence to establish a claim of failure to train or supervise under §1983.    Such claims are established by showing: 1) the supervisor either failed to supervise or train the subordinate official; 2) a causal link exists between the failure to train or supervise and the

---

[28] See: *Percle v. The City of Baton Rouge et al*, 14-CV-449-SDD-RLB; *Wayne Davis on Behalf of Ja'Colby Davis*, 16-CV-834-BAJ-RLB; and *Brett Buffington v The Baton Rouge Police Department, et al.*, 16-CV-156-JJB-RLB.

violation of the plaintiff's rights; and 3) the failure to train or supervise amounts to deliberate indifference. *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998). This Court recently summarized the deliberate indifference standard as follows:

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, a supervisor might reasonably be found to be deliberately indifferent....
>
> We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small*, for example, we held that to succeed on his claim of failure to train or supervise the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to demonstrate a pattern of violations. Similarly, in *Snyder v. Trepagnier*, we held that "proof of a single violent incident ordinarily is insufficient" for liability. Rather, the plaintiff must demonstrate at least a pattern of similar incidents in which the citizens were injured. Moreover, a showing of deliberate indifference requires that the Plaintiffs show that the failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional rights.
>
> Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired[.]

*Skinner v. Ard*, CV 19-66-JWD-EWD, 2020 WL 699740, at *8–9 (M.D. La. Feb. 11, 2020), citing *Clayton v. Colombia Cas. Co.*, 2012 WL 2952531, at *7 (M.D. La. July 19, 2012) (quoting *Estate of Davis*, 406 F.3d at 381–83).

While the plaintiff asserted sections D, E, F, H, and M of Paragraph 66 that the City/Parish failed to create policies to protect First Amendment rights during protests, the plaintiff has no

evidence to establish a historical frequent pattern of violating protestors First Amendment rights during mass demonstration or an unconstitutional application of LSA-R.S. § 14:97 during protests. Training on constitutional rights is covered in the curriculum of the BRPD Basic Training Academy which is based on requirements set forth by Louisiana Peace Officer Standards and Training (POST).[29]  The POST requirement is 496 hours of training including 60 hours of "Legal Aspects", which include Criminal Procedure Law, Louisiana Criminal Statutes and Basic Constitutional Law.[30] The BRPD Basic Training Academy curriculum exceeds the number of hours required by POST.[31] The BRPD Basic Training Academy consists of around 720 hours of training of which at least 63 hours are devoted to "Legal Aspects", including Criminal Procedure Law, Louisiana Criminal Statutes and Basic Constitutional Law.[32] The information covered in the classroom for Criminal Procedure Law, Louisiana Criminal Statutes and Basic Constitutional Law are reinforced and increased during other training segments including Firearms Training, Defensive Tactics, Report Writing, and many Scenario based trainings.[33] The segment on Constitutional Law in the Basic Training Academy includes discussion of the Bill of Rights and other amendments to the US Constitution, including arrest and use of force procedures that comply with the First and Fourth Amendments.[34]  The statutes set forth in Title 14 of the Louisiana Criminal Code are covered and

---

[29] Exhibit H, Affidavit of Thomas S. Morse, Jr., ¶ 4.

[30] *Id.*, ¶ 5.

[31] *Id.*, ¶ 6.

[32] *Id.*, ¶ 7.

[33] *Id.*, ¶ 8.

[34] *Id.*, ¶ 9.

discussed including LSA-R.S. 14:97 Simple obstruction of a highway of commerce.[35]    BRPD officers must also complete forty (40) hours of yearly inservice training, which includes ten (10) hours in Defensive Tactics with Use of Force/Deescalation training and ten (10) hours of Taser training that includes with current legal updates.[36]    These training requirements of the Basic Training Academy were in existence during the entire tenure of Chief Dabadie.[37]

Because (1) BRPD provides training in First Amendment rights and Louisiana law, including LSA-R.S. 14:97 and (2) the plaintiff has evidence to show no past incidents during public protests of BRPD officers violating First Amendment rights or unconstitutional enforcement of LSA-R.S.§ 14:97, the plaintiff cannot the satisfy the requisite "deliberate indifference" to support his allegations of a failure to train/supervise claim based on a lack of policies to protect First Amendment rights and/or enforce LSA-R.S.§ 14:97 during protests. Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Connick v. Thompson*, 131 S. Ct. 1350, 1359-60, 179 L. Ed. 2d 417 (2011).

Also, the plaintiff has made no allegation in his amended complaint for a claim based on a failure to train or supervise in arrest procedures and/or use of force, particularly during mass demonstrations and/or civil disorder. Regardless, such a claim would fail because he has not identified an officer whose arrest procedures or use of force training in the Basic Academy and/or inservice training was specifically deficient. As demonstrated above, BRPD thoroughly trains its

---

[35] *Id.*, ¶ 10.

[36] *Id.*, ¶ 11.

[37] *Id.*, ¶ 12.

officers in arrest procedures and defensive tactics and is in compliance with Louisiana POST standards. BRPD also maintains standards dictated in its policies on these topics. All officers who attended the BRPD Basic Training Academy were trained under the requirements set forth above and are required to attend yearly inservice Training. Plaintiff has no evidence to suggest that this training did not occur.[38]    Plaintiff cannot demonstrate a sufficient pattern of excessive force or false arrests during civil disorder or mass demonstration and therefore cannot the establish "deliberate indifference" to support his claim.    Accordingly, the plaintiff's failure to train claim fails for lack of (1) identifying an officer who was inadequately training; (2) the deficiency in the training that caused a violation of the plaintiff's civil rights; and (3) deliberate indifference.

Plaintiff has no evidence to suggest any of the officers involved in the plaintiff's arrest had a frequent sustained history of false arrest, excessive force, or First Amendment retaliation such that could support a supervision failure that amounts to deliberate indifference. Out of the officers identified as having any physical contact with the plaintiff, only one had a single sustained policy violation of excessive force prior to the July 9th protests. As discussed in detail above, proof of an isolated and distinctive incident is insufficient to establish a failure in supervision that amounts to deliberate indifference. Moreover, the plaintiff has no evidence to establish that this violation was similar in nature to his allegations, i.e. force used during protests and/or similar type of force used.[39]

Even if the deliberate indifference standard could be met, which it cannot, the plaintiff has

---

[38] Because the plaintiff has not identified a particular officer with a training deficiency, two training records are provided as examples. See Exhibit I and J, training records for Jared Neyland and James Thomas. Jared Neyland was a lateral hire and did not attend BRPD Basic Training Academy.

[39] Exhibit K, IA histories of James Thomas, Douglas Barron, Eric Murphy. Because the plaintiff has not identified a particular officer who was involved in the arrest, see as reference IA histories of officers who were deposed by the plaintiff for their alleged involvement in the plaintiff's arrest.

no evidence to establish that this officer used any force on the plaintiff similar to his past violation. A review of the video clearly shows Officer Thomas' contact with the plaintiff was limited to the restraint during handcuffing, picking him up after handcuffing and escorting him to the bus.[40] Officer Thomas did not kick or strike the plaintiff at any time during his arrest.[41]  None of the force used could be deemed excessive or resulted in anything beyond a *de minimus* injury.  Because there is no similarity between the officer's past violation and his interactions with the plaintiff, no causal link can be established to support the plaintiff's claims.    Accordingly, the plaintiff has failed to allege, much less support a claim for municipal liability claims under § 1983 and such claims should be dismissed.

**Even if a Municipal Liability Claim Could be Established, the Plaintiff's § 1983 Claim and Is Barred under Qualified Immunity Doctrine.**

The qualified immunity defense shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  "Once a defendant raises the defense of qualified immunity, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'"  *Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).  This burden is satisfied if the plaintiff can show that (1) the defendant committed a constitutional

---

[40] Exhibit 12 - MES7056 Protest 07-09-16 (5) starting at  0:02; To identify James Thomas see Exhibit 18A, B, and C, screenshots of Exhibit 12 pointing to James Thomas in video;   Exhibit L, Affidavit of James Thomas. Exhibit 9, 7-9-16 DGD10243 (3) starting at 2:46.

[41] *Id.*

violation under current law and (2) the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the alleged misconduct. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir.2009). The court have the authority to decide which prong of the qualified immunity inquiry to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). The following undisputed facts demonstrate that any BRPD officers involved in the plaintiff's arrest are entitled to qualified immunity against the plaintiff's § 1983 claims.

### *False Arrest under § 1983 and State Law*

To establish a claim of false arrest, a plaintiff must show that the arresting officer lacked probable cause. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)), see also *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010). "The probable cause defense to a false arrest claim is broad, as 'even if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense.'" *Roten v. City of Minden*, CV 16-0381, 2017 WL 1398655, at *5 (W.D. La. Apr. 18, 2017), citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990) Qualified immunity may shield an officer from a claim of false arrest if the officer demonstrates that he reasonably but mistakenly concludes that probable cause is present. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

In this case, the plaintiff was arrested pursuant to LSA-R.S. § 14:97, Simple Obstruction of a Highway of Commerce, which provides in relevant part:

A. Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.

Probable cause existed to arrest the plaintiff for this violation and the following related offenses:

LSA-R.S. § 14:100.1, Obstructing Public Passages

A. No person shall wilfully obstruct the free, convenient, and normal use of any public sidewalk, street, highway, bridge, alley, road, or other passageway, or the entrance, corridor, or passage of any public building, structure, water craft, or ferry, by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon or therein.

and

LSA-R.S. § 14:329.1, Riot

A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.[42]

A review of the videos and the undisputed facts show that the plaintiff was standing next to illegal protestors who were purposefully obstructing the roadway.   The NBP group was hostile and refused to disperse out of the roadway.  Plaintiff was dressed similarly to members of the New Black Panther party, i.e. black tank top and camouflage hat.  After being forced out of the way by an officer trying to make an arrest, the plaintiff maintained his position next to the illegal protestors.   Plaintiff

---

[42] Punishment for participating in a riot is found at LSA-R.S. § 14:329.7.

knew or should have know that he needed to leave the immediate area. At the time of his arrest, the plaintiff was still standing on a paved area of the roadway, rather than in the grassy embankment.[43] The curb of the roadway is one foot wide and the shoulder is two feet wide.[44]  Thus, at a minimum, the plaintiff was standing within three feet of the travel lanes.  Based on these observations, officers reasonably inferred that the plaintiff either had committed or was about to commit a violation of LSA-R.S. § 14:97.  Officer Neyland testified that he perceived the plaintiff as being affiliated with the group of protestors who were illegally taking over the roadway and refusing to disperse after being instructed.[45]    Even if officers were mistaken about the plaintiff's affiliation with the NBP group or his position in the roadway, qualified immunity would shield them from liability resulting from his arrest, because such a mistake under the circumstances was reasonable.

LSA-R.S. § 14:97 does not define "road, highway, thoroughfare" to specify that a person must be in the travel portion to be in violation.    The key element to establish this violation is showing the placement of anything or performance of any act that "will render movement thereon more difficult."  The logical interpretation of the statute is that a person may be in violation when standing on any paved section of the road, as long as his position renders movement more difficult. For example, a person could stand in a deep shoulder of the roadway without being in violation of this statute as long as he is reasonably set back from the travel lanes.  However, he would be in violation of this statute if he is standing within the shoulder but on the edge of the travel lanes.  A finding of "rendering movement thereon more difficult" also requires consideration of the type of

---

[43] Exhibit A, Deposition of Day, p. 59, lines 11-13.  Plaintiff claimed he was on the curb.

[44] Exhibits 15, 16, and 17, photos of roadway around location of plaintiff's arrest taken by Mindy Stewart.

[45] Exhibit D, Deposition of Jared Neyland, p. 69, lines 11-25.

roadway itself, including elements such as traffic flow and speed limit (neighborhood street v. interstate highway). At the location of the arrest, the plaintiff was maintaining his position in within a two feet shoulder from travel lanes. Thus, even if it was known that the plaintiff was not part of the NBP group, this willful "act" established probable cause to arrest the plaintiff for a violation of LSA-R.S. §14:97.

Also, assuming the plaintiff was on the curb of the roadway at all times (which is denied), officers also reasonably believed they had probable cause to arrest him for the related offenses of LSA-R.S. § 14:100.1 as his actions in light of the circumstances would restain traffic or passage on Airline Hwy. A plain reading of LSA-R.S. § 14:100.1 shows no requirement that a person be standing in a travel lane of a roadway to be in violation of this statute. Standing along with a group of people on a curb or shoulder of a roadway within two to three feet of the travel lanes of a major highway with a speed limit of 50 mph would obviously hinder traffic, even had the NBP group not spanned across the entire roadway. However in actuality, the plaintiff's actions in light of the circumstances ultimately contributed to and prolonged the shutdown of traffic on this roadway.

The evidence also demonstrates that the probable cause existed to arrest the plaintiff for LSA-R.S. § 14:329.1. Officer Neyland reasonably believed the plaintiff was one of the protestors with the NBP group based on his attire, actions, and location. As depicted in the videos, the NBP group was hostile, carrying weapons (and dropping guns on the ground unsecured) and intentionally obstructed the highway. Based on these facts, officers had reasonable probable cause to arrest the plaintiff for participating in a riot under state law.

Because the officers had probable cause to arrest the plaintiff, his § 1983 claims for false arrest should be dismissed. The established probable cause and/or reasonable belief of probable

cause also negates the State law claim for violation of the right of privacy (false arrest) as alleged in Count Ten of the plaintiff's complaint.

### Excessive Force

To prevail on an excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016), citing, *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). The evaluation of reasonableness of the force requires a case-specific balancing exercise in which "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest ...all play a part" *Hill v. Carroll County, Miss.*, 587 F.3d 230, 234 (5th Cir. 2009), citing, *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396. "[A]n officer's subjective motivation and intent are irrelevant" in evaluating an excessive force claim. *Id*. at 397, 109 S.Ct. 1865. A court must measure the force used under the facts as a reasonable officer would perceive them, not necessarily against the historical facts. *Hill*, 587 F.3d at 234. Claims arising out of negligent acts do not give rise to relief under § 1983. *Young v. Akal*, 985 F. Supp. 2d 785, 799 (W.D. La. 2013) "Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id.*, citing, *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

The videos and deposition testimony demonstrate that officers were attempting to disperse a large tumultuous and resistant crowd, that included multiple armed individuals. As discussed above, it was reasonable to believe that the plaintiff was affiliated with the NPB group and, at minimum, joining in support of the group. The video establishes the plaintiff's resistant behavior by refusing to move away from the NPB group after being forced of the way by officers who were attempting to effect arrests. Given the nature of the environment, the undisputed facts establish that immediately directing the plaintiff to a prone position was reasonable under the presented circumstances. *See*: *Robles v. Aransas County Sheriff's Dept.,* 2:15-CV-495, 2018 WL 1932742, at *3 (S.D. Tex. Apr. 23, 2018), (takedown maneuver did not amount to excessive force when plaintiff disregarded repeated instructions from an officer and was not handcuffed or otherwise restrained when the officer brought him to the ground.); *Griggs v. Brewer,* 841 F.3d 308, 314 (5th Cir. 2016) (officer's conduct in executing the initial takedown maneuver against a drunken, erratic suspect who is resisting arrest is constitutionally unreasonable); *Arshad ex rel. Arshad v. Congemi*, 08-30061, 2009 WL 585633, 7 (5th Cir. Mar. 9, 2009) (officer's takedown of a plaintiff who repeatedly refused to comply with officer's instruction, grew increasingly agitated, and resisted officer's attempt to arrest by pulling her away by her arm was not objectively unreasonable); and *Cardinal v. Allain*, CV-05-107-JJB, 2007 WL 3256447, at 4 (M.D. La. Nov. 5, 2007) (straight arm bar take down after plaintiff jerked away from and pushed officer was reasonable); *Crosby v. Bell*, 5:14-CV-49-DCB-MTP, 2015 WL 4496489, at 2 (S.D. Miss. July 23, 2015) (Officer's use of a takedown maneuver on drunk individual who had signs of resistance and aggression was not excessive).

Due to the close proximity of the NPB group and the sloped landscape of the area where the

plaintiff was initially put on the ground, the plaintiff was immediately pulled away from the crowd to a flat area to ensure safety of both him and the officers.[46]   Attempting to handcuff an arrestee within a few feet of a hostile crowd endangers all parties.   The videos show that the events were unfolding rapidly and officers had to make a quick decision to move the plaintiff away from the crowd.   Moreover, restraining an individual laying upwards on a considerable slope gives a detainee an advantage to push up and resist an officer's actions.[47]   Thus, pulling the plaintiff down the grass embankment was a reasonable use of force.   At very least, the force used cannot be deemed more than negligent, thus the officers would be protected under qualified immunity.

Although the plaintiff asserted that he was beaten by officers, the video clearly shows that no force other than minor restraint was used on the plaintiff during the handcuffing process.[48]   The videos show a few officers held the plaintiff down while he was being handcuffed.   The video then shows Officer Thomas pick up the plaintiff by his forearms and escort him to the bus without incident.   The Supreme Court has held in *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007) that when indisputable objective documentary evidence (videotape capturing the events in question) exists in contradiction with witness testimony, the Court in considering a motion for summary judgment should "view the facts in the light depicted by the videotape."   See also: *Mathews v. Davidson*, 674 Fed. Appx. 394, 395 (5th Cir. 2017) (exaggeration of facts had no basis in summary judgment evidence).   Based on the circumstances and video footage of the event, the force used by officers was reasonable and the plaintiff claims based on excessive force should be dismissed.

---

[46] Exhibit N, Deposition of James Thomas, pp. 74-75.

[47] Exhibits 19 and 20, photos of embankment around location of plaintiff's arrest taken by Mindy Stewart.

[48] Exhibit 12 at 0:10-0:44.

Plaintiff's excessive force claim resulting from these events also fails because the plaintiff cannot establish more than a *de minimus* injury resulted.   To succeed on an excessive force claim a plaintiff must show that he received more than a *de minimus* injury as evaluated in the context in which the force was applied.   *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).   Plaintiff testified that he receive a few small cuts, scratches and bruises as a result of the interaction.[49] Plaintiff did not seek medical treatment for these minor injuries which healed on their own.[50]   In light of the actions of force used to restrain the plaintiff, the injuries are *de minimis* and do not rise to the level of excessive force as a matter of law.   *See: Winston v. City of Shreveport*, CIV. A. 08-111, 2009 WL 3584486, at *6 (W.D. La. Oct. 28, 2009) (alleged contusions suffered by the plaintiff on her left hip and forearm caused by an officer's use of the PR–24 baton were insufficient to satisfy the injury element of a Section 1983 claim for excessive force under the Fourth Amendment.); *Houston–Hines v. Houston Indep. Sch. Dist.*, No. 04–3539, 2006 WL 870459, *5 (S.D.Tex. April 5, 2006) (finding that scratches, bruises, and soreness for about one week after the incident are nothing more than de minimis injuries and are not enough to raise a genuine issue of material fact to support the first element of an excessive force claim under Glenn ); *Jamison v. City of Shreveport*, CV 15-0267, 2016 WL 3920439, at *4 (W.D. La. July 18, 2016) (no constitutional violation of excessive force was found where plaintiff admitted in his deposition that his physical injuries were a head knot on his forehead, skin burns on the back and front of his arms, knee scuffs, and concrete burns on his shin areas but did not seek any medical treatment for his injuries).   Becasue the plaintiff cannot establish that the few small cuts, scratches and bruises rise above a *de minimus* injury, his excessive force

---

[49] Exhibit A, Deposition of Day, Page 60, see Page 75-92 for description of cuts, scratches and bruises.

[50] *Id.*

claim should be dismissed.

Plaintiff's claims based on alleged hitting and/or choking during the encounter should also fail because there is no medical evidence to establish a discernable injury was sustained *directly and only* as a result of these alleged acts. See: *Orr*, 844 F.3d at 492. If the *de minius* injuries described above (scratches and bruises) resulted from this incident, they likely occurred when the plaintiff was taken to a prone position and moved to the flat portion of the embankment. Because, there is no evidence to suggest any injury resulted directly and only from any alleged hitting or choking, a claim based on such allegations should be dismissed.

Plaintiff has not produced any medical evidence to support a finding that these health issues resulted from the incident. In *Burton v. City of Senatobia*, CIV.A. 2:06CV216-P-A, 2008 WL 619301, at *9 (N.D. Miss. Mar. 3, 2008), the court held that a plaintiff must have medical proof that he was in fact injured. Similarly, in *Kennedy v. City of Shreveport*, CIV.A. 07-1049, 2008 WL 2437043, at *4 (W.D. La. June 13, 2008), the Court found an officer was entitled to qualified immunity, as the facts alleged, taken in the light most favorable to the plaintiff, did not show more than a *de minimus* injury. The Court noted that while the plaintiff alleged physical pain as a result of the incident, he could only state that his back was tight for about a week and his medical records did not support a visit to a physician following this incident for complaints of physical pain. To the extent the plaintiff may claim he had vision problems and/or mental issues after the incident, he has no medical evidence to establish that the incident at issue caused these injuries. Because the plaintiff cannot establish (1) a recoverable injury which resulted directly and only from force that was clearly unreasonable and 2) an official policy or failure in training/supervision that was the moving force, the plaintiff's § 1983 excessive force claim should be dismissed.

Plaintiff's state law battery claim should be dismissed based on the same rational. "Under Louisiana law, battery is defined as intentional harmful or offensive contact with a person." *Cherry v. Shaw Coastal, Inc.*, CIV.A. 08-228-JJB, 2010 WL 3717281, at *2 (M.D. La. Sept. 13, 2010), citing, *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987). The actor need not act with malice or with an intent to inflict actual damage; it is enough if he intends to inflict an offensive contact without consent. *Id.* Louisiana courts use a number of factors to evaluate the reasonableness of the officer's actions, including: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1136 (5th Cir. 2014). The same undisputed facts and reasoning discussed above demonstrate the BRPD officers acted in a reasonable manner and therefore preclude any state law battery claim.

### First Amendment Retaliation

To establish a First Amendment retaliation claim, a plaintiff must demonstrate that:

(1) he was engaged in a constitutionally protected activity; (2) the defendant's conduct caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; (3) the defendant's adverse actions were substantially motivated by his constitutionally protected activities. *Keenan v. Tejada*, 290 F.3d 252, 257 (5th Cir.2002).

Because the plaintiff has not alleged a claim against an officer in his individual capacity and the plaintiff cannot show an official custom or policy that resulted in a First Amendment violation for purposes of municipal liability, the plaintiff does not have § 1983 First Amendment retaliation claim in this matter.

25

Moreover, the plaintiff cannot demonstrate the third element of a First Amendment retaliation claim because there was reasonable probable cause existed to arrest the plaintiff. "Fifth Circuit and Supreme Court precedent firmly holds that First Amendment retaliatory actions fail as a matter of law when the official has probable cause to arrest and does arrest." *Louisiana Cleaning Sys. v. Brown*, CIV.A. 14-2853, 2015 WL 6869907, at *13 (W.D. La. Nov. 9, 2015). The evidence shows that the plaintiff's arrest was solely (at very least "substantially") motivated by his refusal to leave the area and perceived affiliation with the illegal protestors who were intentional trying to take over the roadway. Accordingly, the plaintiff's First Amendment retaliation claim fails as a matter of law.

### Constitutional Challenge to LSA-R.S. §14:97 As Applied to the Plaintiff's Arrest

As-applied Constitutional challenges to a statute requires a court to determine whether a statute is administered unconstitutionally against a particular plaintiff. *Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 773–74 (N.D. Tex. 2018). The undisputed fact establish that BRPD officers applied the statute disperse an overtly illegal crowd that was obstructing a major highway. As discussed in detail above, officers reasonably believed that the plaintiff was participating in the illegal act of obstructing the highway with the NBP group. Because probable cause existed to arrest the plaintiff under this statute, his as-applied constitutional challenge fails as matter of law.

### Plaintiff's Cannot Establish a Conspiracy Claim under § 1983 or § 1985 or State Law

To succeed on a § 1983 claim for civil conspiracy, the plaintiff must prove (1) the existence of a conspiracy that involves state action and (2) the deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). Section

1985(3) prohibits conspiracies "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws." Similar to a civil conspiracy claim under § 1983, claims under § 1985(3) requiring a showing of (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

Plaintiff has no evidence to support a finding of that the City/Parish entered into an agreement to specifically deprive him of civil rights. Plaintiff's complaint contains only conclusory allegations that the defendants and their agents took concrete steps to enter into an agreement in July 2016 to unlawfully detain, arrest, and imprison him, knowing they lacked probable cause to do so, and for the purpose of impeding the plaintiff from exercising his First Amendment rights to protest.

Plaintiff's allegations that the defendants conspired to deprive equal protection of the law to Black citizens who engaged in protest are equally without merit. Plaintiff has no evidence to suggest that there was an agreement whose purpose was to deprive any person or class of persons of the equal protection of the laws. Further, the plaintiff has not alleged any facts to suggest that there was an agreement based on race or that the City/Parish or its officials conspired with anyone to discriminate against Plaintiff on the basis of his race. According to the Incident Commander in charge of BRPD response to the 2016 protests, James Darron Leach, there was no agreement in place to suppress the Constitutional rights of the plaintiff or his class.[51] In fact, the evidence cited herein clearly establishes that the law enforcement actions at the time of the plaintiff's arrest were in

---

[51] Exhibit M, Affidavit of James Darron Leach.

response to any unlawful protestors (regardless of race) blocking a roadway. At the time of the plaintiff's arrest, the evidence clearly establishes that BRPD was not committing illegal acts but instead responding to illegal activities of protestors.

Plaintiff's conspiracy claims also fail because he cannot establish a civil rights violation."A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Richards v. Stone*, CV 19-0966, 2019 WL 6997917, at *8 (W.D. La. Nov. 4, 2019), citing, *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). Because the evidence establishes that BRPD was acting upon illegal activity and the plaintiff has failed to establish a specific agreement to deprive any individual of their civil rights, his conspiracy claims pursuant to §1983 and §1985 must be dismissed.

**Plaintiff's State Law Claims Should be Dismissed**

In his Complaint, the plaintiff asserted multiple claims against the officers under Louisiana law including: Battery,[52] False Arrest,[53] Intentional Infliction of Emotional Distress, Deprivation of Free Expression, Negligent Injury, Abuse of Rights, and Abuse of Process. At the outset, the District Court should decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had pendent jurisdiction. *Priester v. Lowndes County*, 354 F.3d. 414, 425 (5th Cir. 2004); 28 U.S.C. § 1367(c)(3). Plaintiff has not developed any of his state law claims. Thus, upon dismissal of all federal claims against the City/Parish and Mayor Broome, the Court should decline to exercise supplemental jurisdiction over the state law claims and dismiss them as well.

---

[52] The State law battery claim was addressed with the §1983 excessive force claim.

[53] The State law false imprisonment claim was addressed with the §1983 False Arrest claim.

28

In the alternative, the plaintiff does not have sufficient evidence to succeed the Intentional Infliction of Emotional Distress, Deprivation of Free Expression, Negligent Injury, Abuse of Rights, and Abuse of Process. "To state a cause of action for intentional infliction of emotional distress (IIED), a plaintiff must plead the following three elements: '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'" *Thomas v. Gulotta*,15-435-JJB-RLB, 2017 WL 379449, at 12 (M.D. La. Jan. 26, 2017), citing, *Sparks v. Donovan*, 2004-388 (La.App. 3 Cir. 10/13/04), 884 So.2d 1276, 1282. The undisputed facts establish that the plaintiff cannot satisfy the elements that would entitle him to mental anguish damages resulting from the alleged acts, particularly that the officers' conduct was extreme and outrageous or that they desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. Plaintiff's claims based on negligent injury are repetitive of his false arrest/imprisonment and battery claims and should be dismissed based on the same reasoning in support of dismissal of those claims. Also, the plaintiff's Deprivation of Free Expression claim wholly undeveloped and unsupported. Plaintiff's arrest and ultimate deprivation from the protesting resulted from reasonable probable cause that he was committing statutory violations. Accordingly, these State law claims should be dismissed.

With respect to the abuse of process claim based on a boilerplate affidavit, the plaintiff has failed to establish how the use of a template for efficiency purposes results in liability. The elements of an abuse of process cause of action are: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding." *Delcambre v.*

*Mancuso*, 268 So. 3d 325, 331 (La. App. 3d Cir. 2019), reh'g denied (May 29, 2019). "An abuse of

process occurs '[w]hen the actor employs legal process in a manner technically correct, but for a

wrongful and malicious purpose to obtain an unjustifiable end or an object which it was not the

purpose of the particular process employed to effect.' " *Hebert v. La. Licensed Prof'l Vocational*

*Rehab. Counselors*, 07-610 (La.App. 3 Cir. 3/4/09), 4 So.3d 1002, 1009. Plaintiff's abuse of process

claims is without merit because there is no evidence to suggest BRPD officers used templates for

a malicious purpose. Affidavit of Probable Cause templates were used solely to speed up arrestee

processing.[54]

> The state law doctrine of abuse of rights has been summarily explained as follows:
>
> [T]he abuse of rights doctrine, which has been invoked sparingly in Louisiana, is a
> civilian concept that applies only in limited circumstances because its application
> renders unenforceable one's otherwise judicially protected rights. *Lee v. Pennington*,
> 2002-0381, pp. 7-8 (La. App. 4 Cir. 10/16/02), 830 So.2d 1037, 1043. The principle
> is essentially that "fault" in the delictual sense can be imposed upon a party who
> attempts to exercise a legal right with the primary intention of harming or imposing
> a detriment upon another. See *Lambert v. Maryland Cas. Co.*, 403 So.2d 739, 755
> (La. App. 4th Cir.1981). Therefore, a cause of action for abuse of rights does not
> exist unless two conditions are met: (1) there is no benefit to the person exercising
> the legal right; and (2) there is damage or injury to the person against whom the legal
> right is asserted. *Id*. at 757.

*Insulation Techs., Inc. v. Industrial Labor and Equipment Services, Inc*., 2013-0194, pp. 7-8 (La.

App. 4 Cir. 8/14/13), 122 So.3d 1146, 1151. A plaintiff may only recover under the abuse of rights

doctrine only where one of the following conditions is met: (1) rights were exercised for the

predominant purpose of harming another; (2) there was no legitimate motive for exercise of the right;

(3) exercise of the right violates moral rules, good faith, or elementary fairness; or (4) rights were

exercised for a purpose other than that for which they were granted. *Schexnider v. Schexnider*,

---

[54] Exhibit B, Deposition of James Darron Leach, p. 121, lines 2-10.

6:11CV2148, 2014 WL 3899132, at *7 (W.D. La. Aug. 8, 2014), citing, *Truschinger v. Pak*, 513 So.2d 1151, 1154 (La.1987); *Slimp v. Sartisky*, 100 So.3d 901, 907, n. 3 (La.App.4 Cir.2012). The abuse of rights doctrine typically applies in cases implicating contractual or property rights. *Id*. Plaintiff can not satisfy any of these element and all of the evidence presented herein establish the contrary. Accordingly, the plaintiff's claims of abuse of process and abuse of rights fail as a matter of law.

<u>CONCLUSION</u>

Plaintiff's claims under 42 U.S.C. § 1983 against City of Baton Rouge and Parish of East Baton Rouge (City/Parish) and Mayor Sharon Weston Broome should be dismissed because the plaintiff cannot demonstrate the elements of municipal liability. In the alternative, the officers involved in the plaintiff's arrest are entitled to qualified immunity.

Moreover, no genuine issue of material fact exists which would preclude dismissal of the plaintiff's § 1983 and § 1985 conspiracy claims as a matter of law. Plaintiff has also failed set forth any facts or legal basis that would support an action under state law.

For the reasons stated herein, it is respectfully requested that the defendants' motion for summary judgment be granted.

By Attorneys:
Anderson O. Dotson, III
Parish Attorney

   /s/Deelee S. Morris
Deelee S. Morris (#28775)
Special Assistant Parish Attorney
A. Gregory Rome (#21062)
Director of Litigation/Risk Management
222 St. Louis Street, 9th Floor
Baton Rouge, LA 70802
Telephone: (225) 389-3114
Facsimile: (225) 389-8736
Email: dsmorris@brgov.com
Email: grome@brla.gov

31

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

TRAVIS DAY

                                          **CIVIL ACTION**

VERSUS

                                          **NO.   3:17-CV-328-JWD-EWD**

CITY OF BATON ROUGE/PARISH OF
EAST BATON ROUGE, ET AL

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE

I hereby certify that a copy of the foregoing Memorandum in Support of Motion for Summary Judgment was this date electronically filed with the Clerk of Court using the Court's CM/ECF system.   Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.   Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, first class postage prepaid, and properly addressed.

Baton Rouge, Louisiana this 21st day of February, 2020.

                                      **/s/ Deelee S. Morris**
                                      **DEELEE S. MORRIS**