# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TRAVIS DAY**                                                                 **CIVIL ACTION**

**VERSUS**                                                                        **NO. 17-328-EWD**

**BATON ROUGE CITY**                                                 **CONSENT CASE**
**POLICE, ET AL.**

## RULING AND ORDER

      Before the Court is the Motion to Exclude Testimony and Report of Defendants' Expert Witness ("Motion"),[1] filed by Travis Day ("Plaintiff"). Plaintiff seeks an order "barring" The City of Baton Rouge/Parish of East Baton Rouge (the "City") and Mayor Sharon Weston Broome, in her official capacity (the "Mayor") (collectively, "Defendants") from using the testimony or report of their expert, Kerry Najolia ("Najolia"), at trial. Defendants oppose the Motion.[2] As set forth below, the Motion is granted in part and denied in part. Najolia will not be allowed to offer opinions as to whether probable cause existed for Plaintiff's July 9, 2016 arrest or the reasonableness of the force utilized in effecting the arrest. The Court will also *sua sponte* exclude the opinions of Dr. Peter Kraska regarding these issues for the same reasons. Both experts will be allowed to testify as to the other topics stated in their reports.

## I.      BACKGROUND[3]

      Plaintiff's operative complaint alleges a municipal liability claim against Defendants under

---

[1] R. Doc. 106.

[2] R. Doc. 119.

[3] The Court has previously ruled on several motions, and those Rulings contain more comprehensive factual and procedural backgrounds, which are not relevant to this Motion. *See* R. Doc. 53 (Ruling on Motion to Stay Discovery), R. Doc. 89 (Ruling on EBRSO Defendants' Motion to Dismiss), and R. Doc. 145 (Ruling on Motion for Summary Judgment). The Ruling on Motion for Summary Judgment dismisses all claims against the Mayor.

*Monell v. New York City Dept. of Social Services*[4] for purported violations of 42 U.S.C. § 1983 and Louisiana state law claims arising from Plaintiff's arrest by several Baton Rouge Police Department ("BRPD") officers on July 9, 2016 while Plaintiff and others were protesting in Baton Rouge, Louisiana in the wake of the July 5, 2016 police-involved shooting of Alton Sterling. Specifically, Plaintiff alleges that, while he was lawfully protesting, he was arrested without probable cause, charged and detained for violating La. R.S. § 14:97 (Simple Obstruction of a Highway of Commerce), despite never entering the roadway, and subjected to excessive force.[5] This is one of many lawsuits stemming from the Baton Rouge protests.

Both parties have identified law enforcement experts as trial witnesses.[6] Plaintiff challenges the admissibility of Najolia's opinion testimony under *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and similar Fifth Circuit cases.[7] While Plaintiff does not appear to dispute that Najolia is an expert in the area of law enforcement based on his qualifications, experience, and training,[8] he argues

---

[4] 436 U.S. 658, 98 S.Ct. 2018 (1978).

[5] R. Doc. 1, ¶¶ 1-10, 14, 55-64.

[6] *See* R. Doc. 106-2 (report of Defendants' expert, Kerry Najolia) and R. Doc. 106-3 (report of Plaintiff's expert, Dr. Peter Kraska).

[7] *See, e.g.*, *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997).

[8] *See, generally*, R. Doc. 106-1. *See also id*. at p. 10 ("[Defendants'] expert could well be qualified to provide opinions in cases involving allegations of excessive force or arrests without probable cause"). Further, Plaintiff references several rulings of this Court regarding the admissibility of Najolia's expert testimony (or portions thereof), discussing Najolia's qualifications. *See id*. at ns. 23 and 25 (discussing (1) *Harris v. City of Baton Rouge*, No. 03-640, 2005 WL 6009992 (M.D. La. Apr. 8, 2005) (finding that Najolia "is qualified to express opinions regarding applicable training and certification standards relating to the use of dogs in police work" but not as to the "reasonableness of the actions of the police officer in making [an] arrest"; (2) *Gage v. Jenkins*, No. 13-368, 2017 WL 2190064 (M.D. La. May 18, 2017) at R. Doc. 159, pp. 7-8 (noting that "Najolia is unquestionably a qualified expert in the area of law enforcement, training and use of force" but excluding his testimony as to the reasonableness of an officer's actions as such opinion would "be of little assistance to the jury in understanding the evidence or in reaching its own resolution of the factual question whether Defendants utilized force thereafter"); and (3) *Haynes v. Parker*, No. 13-818 (M.D. La. Mar. 16, 2017) at R. Doc. 101, p. 6   (noting that Najolia is "admittedly 'an overwhelmingly qualified expert in law enforcement'" but excluding his opinion on the reasonableness of defendant's use of force).

that Najolia should not be permitted to offer expert testimony at trial because (1) Najolia is offering legal conclusions—namely, as to the existence of probable cause and the reasonableness of the force used to arrest Plaintiff—"couched" as expert opinion,[9] (2) Najolia's opinions "contain[] multiple factual and credibility determinations that usurp the juror's role as finders of fact[,]"[10] and (3) Najolia's opinion regarding the "Miami Model" is irrelevant.[11] Specifically, Plaintiff argues that, instead of basing his opinion upon personal knowledge relative to any aspect of the events on July 9, or any particular methodology applied to those events, Najolia essentially engages in a credibility determination and appears "to have credited only the facts as asserted by his client's employees [*i.e.*, Defendants], ignoring that many of these facts are in dispute."[12] Finally, Plaintiff argues that, as this Court has previously done, Najolia's opinions and testimony should be excluded because they are "unduly prejudicial" and/or will mislead the jury.[13]

In their Opposition, Defendants argue that Najolia is qualified based on his experience and training to offer expert opinions at trial as set forth in his report. Further, Defendants contend that Najolia's report and testimony should not be excluded or limited for several reasons.[14] First, Defendants argue that Najolia was retained to rebut the opinion of Plaintiff's expert, Dr. Kraska, and that Defendants "have not sought to introduce [Najolia's] expert report into evidence, thus [P]laintiff's request to strike any legal conclusion from the report is unwarranted."[15] Second,

---

[9] R. Doc. 106-1, pp. 4-6.

[10] *Id*. at pp. 6-8.

[11] *Id*. at pp. 9-10.

[12] *Id*. at p. 7. Further, Plaintiff notes that, while he referenced the video of Plaintiff's arrest, Najolia qualifies his statement, noting, "The trier-of-fact will make the determination as to the weight of this video as it relates to this case." *Id*. at p. 8. Similar qualification is lacking with respect to Najolia's statement about Defendants' testimony.

[13] *Id*. at p. 8. *See also* n.8, *supra*.

[14] *See, generally*, R. Doc. 119.

[15] *Id*. at pp. 2-3. Rather, Defendants claim that Najolia's report was "provided as part of the discovery process pursuant to [Fed. R. Civ. P. 26] and is not automatically qualified as admissible." *Id*. at p. 3. Likewise, Defendants argue that the facts section, which Plaintiff finds objectionable, complied with Rule 26 because it contains the "facts or data

Defendants contend that Najolia's report and testimony should not be excluded because Fed. R. Evid. 704 allows expert testimony to embrace ultimate issues, and Najolia "cannot opine on the training, policies, and procedure involving arrest and force used during the protests without considering the surrounding circumstances and the reasonableness of such acts [*i.e.*, ultimate issues of fact and law]."[16] Third, Defendants distinguish the *Gage* and *Haynes* cases, noting that, unlike here, Najolia's testimony "was not offered to establish appropriate training, policy, protocols, and use of force tactics" in those cases.[17] Finally, Defendants argue that Plaintiff's expert also offers opinions on ultimate legal and factual issues.[18]

## II.    LAW & ANALYSIS

### A.    *Daubert/Kumho* Evaluation of Admissibility of Expert Witnesses

Pursuant to Fed. R. Evid. 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

considered [by Najolia] in forming his opinions." *Id*. at p. 5. Because of this, Defendants suggest that Plaintiff's issues with Najolia's proposed testimony should be raised through "objections at trial if and when these issues arise." *Id*. at pp. 3-5.

[16] *Id*. at pp. 3-4.

[17] *Id*. at p. 4.

[18] *Id*. (noting that Dr. Kraska "explicitly opines on page 5 of his report '[m]y conclusion is similar: [Plaintiff's] arrest was not based on probable cause…").

Pursuant to its express terms, Rule 702 does not render all expert testimony admissible.[19] Further, even if the proposed expert testimony satisfies each of the elements set forth in the Rule, the testimony may still be excluded pursuant to the discretionary provisions of Fed. R. Evid. 403, which allow a Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

When a *Daubert* challenge is made to the testimony of a proposed expert, a district court may, but is not required, to hold a hearing at which the proffered opinion may be challenged.[20] When a hearing is not held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry."[21] "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting [or denying] expert testimony.'"[22]

The role of the trial court is to serve as the gatekeeper for expert testimony by making a determination whether the expert opinion is reliable. As the Fifth Circuit has explained:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. Daubert went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The Court summarized:
>
> > The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on

---

[19] *United States v. Scavo*, 593 F.2d 837, 844 (8th Cir. 1979).

[20] *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 201 (5th Cir. 2016).

[21] *Id*.

[22] *Id*.

principles and methodology, not on the conclusions that they generate.[23]

The cases following *Daubert* have expanded upon the listed factors and have explained that the list is not all-encompassing and that not every factor is required in every case.[24] Indeed, courts may look to other factors as well.[25] In *Fayard v. Tire Kingdom, Inc.*,[26] this Court explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

This Court has broad discretion in deciding whether to admit expert opinion testimony.[27]

"Notwithstanding Daubert, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'"[28] Further, as explained in *Scordill v. Louisville Ladder Group., L.L.C.*:[29]

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

---

[23] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

[24] *See, e.g., General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

[25] *See General Electric Co.*, 522 U.S. at 146.

[26] No. 09-171, 2010 WL 3999011, *1 (M.D. La. Oct. 12, 2010).

[27] *See, e.g., General Electric Co.*, 522 U.S. at 138-39 (holding that an appellate court's review of a trial court's decision to admit or exclude expert testimony under *Daubert* is made under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 (holding that "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony"); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence").

[28] *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011), citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.).

[29] No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003).

evidence.' The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

The Supreme Court has also recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony."[30] In that vein, the Fifth Circuit has concluded that certain "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering.[31] The Fifth Circuit further explained:

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies", trial judges are given broad discretion to determine "whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case."[32]

## B.    Application of *Daubert*/*Kumho* to Najolia's Report and Testimony

Najolia's testimony will be excluded relative to (1) whether probable cause existed to arrest Plaintiff on July 9, 2016 and (2) the purported "reasonableness" of certain BRPD officers' actions in utilizing force to arrest Plaintiff on July 9, 2016. In preparing his expert report, Najolia reviewed numerous materials, including photographs, videos, deposition transcripts, training documents, the July 9, 2016 incident report and affidavit of probable cause relating to Plaintiff, BRPD General

---

[30] *Kumho*, 526 U.S. at 150.

[31] *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)).

[32] *Id*. at 1123 (citing *Kumho*, 526 U.S. at 153).

Orders, and other documents.[33] Based on his review of those materials, combined with his experience and training, Najolia sets forth his view of the facts and expresses several opinions about the events that occurred on July 9, 2016, including Plaintiff's arrest.[34] Among other things, Najolia's opinions include (1) that, based on the totality of the circumstances, BRPD officers had probable cause to arrest Plaintiff under La. R.S. § 14:97 and other statutes because Plaintiff "was impeding the flow of traffic in the 9000 block of Airline Highway along with many other protestors"[35] and (2) that, based on the totality of the circumstances, the force used by the BRPD officers who arrested Plaintiff was reasonable, "justified, authorized, [and] necessary," due, in part, to Plaintiff acting in a "resistant manner" and refusing to submit to a "lawful arrest."[36]

---

[33] *See, e.g.,* R. Doc. 106-2, pp. 3-4 (materials reviewed).

[34] *Id*. at pp. 4-9 (case facts) and pp. 9-13 (opinion).

[35] The Court has combined and summarized Najolia's opinions regarding the existence of probable cause. *See, e.g.,* R. Doc. 106-2, pp. 10-12 (opining: (a) "There has been no evidence presented that any law enforcement officers obstructed any lawful assembly that were following police commands and not violating any laws"; (b) "Police Officers are authorized to effect an arrest upon having probable cause based on the totality of the circumstances"; (c) "[Plaintiff] was impeding the flow of traffic in the 9000 block of Airline Highway along with many protestors: 1). by joining and supporting a group of unlawful protestors stretched across the highway and 2) standing within the two-foot shoulder of a major highway that has a posted speed limit of 50 mph with heavy vehicular traffic"; (d) "Baton Rouge Police Officers commanded all of the protestors to clear Airline Highway. Failure to do so would result in arrest"; (e) "[Plaintiff] failed to comply to the Baton Rouge Police Department's lawful orders"; (f) "[Plaintiff] was placed under arrest based on the violation of the elements of LRS 14:97 relative to Simple Obstruction of a Highway of Commerce. In addition, [Plaintiff] also violated the elements of LRS 14:100.1 relative to Obstructing Public Passages, LRS 14:329.3 relative to Failure to Disperse, LRS 14:329.2 relative to Inciting a Riot, as defined LRS 14:329.1- Riot"; (g) "The evidence clearly shows that the protestors who were lawfully demonstrating were allowed to continue to assemble without interruption by police"; (h) "Additional and continuous verbal commands were directed to protestors to clear the roadway or face arrest"; (i) "After several unsuccessful attempts police began to arrest the protesters who were in violation of the law"; and (j) "No departmental disciplinary or state/federal criminal action for false arrest or excessive force was warranted against the officers involved in [Plaintiff's] arrest.").

[36] The Court has combined and summarized Najolia's opinions regarding the use of force on Plaintiff. *See, e.g.,* R. Doc. 106-2, pp. 10 – 13 (opining: (a) "Police Officers are authorized to effect an arrest upon having probable cause based on the totality of the circumstances"; (b) "[Plaintiff] failed to comply to the Baton Rouge Police Department's lawful orders"; (c) "At some point, [Plaintiff] was pushed out of the way by officers as they were effecting an arrest in the same area"; (d) "[Plaintiff] responded in a resistant manner by refusing to move away (Video DeSalvo Protest 7/9/16 at 1:51)"; (e) "[Plaintiff] also gave resistance during Officer Thomas' efforts to escort while walking and standing up. (Video ME57056 (5) @ 0:43 seconds)"; (f) "Any resistance offered by [Plaintiff] to Officer Neyland and the other officers when they approached to effect the arrest would be overcome and controlled as soon as possible. The tactics used by Officer Neyland and the other officers were according to their training. Techniques maximizing safety of all person involved (including the perpetrator-[Plaintiff]) were utilized. [Plaintiff] was directed to a prone position and quickly moved to a safer area"; (g) "Once [Plaintiff] was secured by Officers, he was then handcuffed [and] was transported to the Correctional Center for booking…"; (h) "In my opinion, based on the totality of the circumstances, Officer Neyland and the other officers' use of force were justified, authorized, necessary and in

While Najolia is a qualified expert in law enforcement, his opinions on probable cause and the reasonableness of the force used by the BRPD officers when arresting Plaintiff are inherently unreliable to the extent they rely on video and photographic evidence which has been determined by the Court to be inconclusive.[37] Although he has no personal knowledge relative to Plaintiff's July 9 arrest, Najolia essentially engages in a credibility determination and appears to accept, *in toto*, Defendants' version of events.[38] After making those credibility determinations, Najolia concludes that on July 9, Plaintiff in fact stepped into the roadway and "impeded the flow of traffic" in violation of La. R.S. § 14:97; "failed to comply [with BRPD's] law orders"; and "acted in a resistant manner" after being "pushed" by BRPD officers and then again when they attempted to arrest him.[39] Having arrived at these conclusions of fact, Najolia then renders opinions regarding the ultimate issues in the case. Specifically, Najolia concludes (1) that Defendants had probable cause to and did arrest Plaintiff for violating La. R.S. § 14:97,[40] and (2) that, based on the "totality of the circumstances," the use of force by "[BRPD] Officer Neyland and the other officer[s]…were justified, authorized, necessary and in accordance with policy, procedures and protocols."[41]

---

accordance with policy, procedures and protocols…"; (i) "No departmental disciplinary or state/federal criminal action for false arrest or excessive force was warranted against the officers involved in [Plaintiff's] arrest"; and (j) "If the trier of fact determines that force was used after [Plaintiff] was handcuffed and no longer resisting arrest, then that force would be unauthorized.").

[37] *See* R. Doc. 145, pp. 7-8, 32, 35 & 37. Conclusions based on video evidence submitted by the parties are inherently unreliable as that evidence is too inconclusive to establish either party's version of events. *Graham v. Dallas Area Rapid Transit*, 288 F.Supp.3d 711, 731 (N.D. Tex. Dec. 28, 2017).

[38] Although Najolia includes in his report portions of Plaintiff's version of the facts surrounding Plaintiff's arrest, he discounts Plaintiff's version of those events without explanation. *See, e.g.,* R. Doc. 106-2, p. 13 ("If the trier of fact determines that force was used after [Plaintiff] was handcuffed and no longer resisting arrest, then that force would be unauthorized.")

[39] *See* ns.34-35, s*upra*.

[40] R. Doc. 106-2, pp. 10-13. Najolia also concluded that BRPD officers had probable cause to arrest Plaintiff for violation several other Louisiana statutes, although Plaintiff was not arrested or charged with those violations. *See id*. at p. 11 (referencing La. R.S. 14:100.1—Obstructing Public Passages, La. R.S. § 14:329.3—Failure to Disperse, and La. R.S. § 14:329.2—Inciting a Riot).

[41] *Id*. at p. 13.

Najolia's proposed testimony regarding the foregoing does not meet the test for the allowance of expert opinion evidence. As noted above, Fed. R. Evid. 702 allows for the introduction of such evidence when "the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*." (Emphasis added). Notwithstanding his qualifications in the area of law enforcement, training, and use-of-force, his opinions as to the existence of probable cause and the reasonableness of the BRPD's use of force on Plaintiff are nonetheless unreliable because they do not apply any particular analysis or methodology to the July 9 incident but merely accept one of two contested factual versions in this case. The Court fails to see how this will assist the jury in understanding the evidence or in reaching its own resolution of the factual questions, especially in a case, like this one, where multiple videos and photographs depict some of the events of July 9, and each side believes the evidence supports its version of those events. Najolia is not in a better position, despite his law enforcement expertise, to opine as to whether the evidence establishes probable cause and/or excessive force.  In simply accepting Defendants' version of the facts, Najolia's report artificially bolsters and potentially elevates Defendants' version without any apparent basis for such enhanced credibility. This presents the type of danger that the gatekeeping function of *Daubert* is intended to alleviate, *i.e.*, the danger that the purported expert testimony will receive unwarranted weight and will encourage the factfinder to give more weight to one side's contention than is warranted.

While the issues with the facts upon which Najolia relies to reach his conclusions might be properly addressed through cross-examination, Najolia's opinions regarding probable cause and excessive force also go beyond "embracing" ultimate issues of law and fact[42] and instead offer

---

[42] Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). *See also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).

"ultimate legal conclusions," for which "[t]he judge is the source of law and the only expert needed by a jury."[43] Although the Fifth Circuit has explained that Rule 704 "abolished the *per se* rule against testimony regarding ultimate issues of fact, 'courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.'"[44] Whether probable cause existed at the time of Plaintiff's arrest is an ultimate question for the jury to decide.[45] So too is the reasonableness of the officers' actions in arresting and using force on Plaintiff.[46]

---

[43] *Manton v. Strain*, No. 09-339, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010) (quoting *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985)). *See also Hayward v. Landry*, No. 02-927, 2006 WL 8432349, at *1 (M.D. La. Aug. 3, 2006) (explaining that expert testimony on "ultimate questions of law is not favored" and that "[t]he distinction between ultimate facts and ultimate questions of law is important because testimony on ultimate factual questions aids the jury in reaching a verdict while testimony which articulates and applies the relevant law…circumvents the jury's decision-making function by telling them how to decide the case," and referencing numerous cases where "federal circuits have held that an expert witness may not give an opinion on ultimate issues of law." (internal quotations and citations omitted); *Tolan v. City of Bellaire*, No. 09-1324, 2015 WL 12765413, at (S.D. Tex. Aug. 27, 2015) (noting that both sides are "correct" in arguing that "the other's expert cannot provide opinions on purely legal issues, and precluding both experts from offering legal conclusion opinions" at trial).

[44] *Manton,* 2010 WL 4364480, at *2 (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)).

[45] *See Graham v. Dallas Area Rapid Transit*, 288 F.Supp.3d 711, 730-32 (N.D. Tex. Dec. 28, 2017) (excluding defendants' law enforcement experts' opinions (a) that "any officer in the same or similar circumstances as Defendant Officers could reasonably believe probable cause existed" and (b) that "the totality of the circumstances, including the video of the incident and conduct of [plaintiff], could lead any officer in the same or similar circumstances to believe probable cause existed to arrest [plaintiff]" under Fed. R. Evid. 702, *Daubert*, and *Kuhmo*, because the experts' reports were "ridded with legal conclusions concerning probable cause," did not "preface [their] conclusions with the legal standards for probable cause," did not "address whether [they] had sufficient facts to reach [their] conclusions or discuss procedures or methodologies in the area of policing including those employed in the course of making a lawful arrest," and accepted "*carte blanche*, the Officers' version of the facts while labeling [plaintiff's] version of the events as merely 'allegations' or 'claims,' which implies his version is open to challenge, debate, or doubt," among other reasons.). *See also Hayward*, 2006 WL 8432349, at *3 (precluding plaintiff's expert from "giving any testimony on the issue of probable cause," which is a statement of a legal conclusion); *Manton*, 2010 WL 4364480 (excluding plaintiff's law enforcement expert from testifying at trial about probable cause and other issues).

[46] *See Graham*, 288 F.Supp.3d at 730-32 (excluding defendants' law enforcement experts' opinions (a) that "the Defendant Officers' use of force was reasonable, necessary, and only to the level of force necessary to accomplish a legitimate police objective and overcome [plaintiff's] violent resistance" and (b) that "any officer in the same or similar circumstances as [Defendant Officers] could reasonably believe that [his or her] use of force was reasonable, necessary, and only the level needed and could have acted in the same or similar manner as [Defendant Officers]" under Fed. R. Evid. 702, *Daubert*, and *Kuhmo*, because the experts' reports were "ridded with legal conclusions concerning…use of force," did not "preface [their] conclusions with the legal standards for…use of force," did not "address whether [they] had sufficient facts to reach [their] conclusions or discuss procedures or methodologies in the area of policing including those employed…in determining whether the use of force was excessive on a continuum of force," and accepted "*carte blanche*, the Officers' version of the facts while labeling [plaintiff's] version of the vents as merely 'allegations' or 'claims,' which implies his version is open to challenge, debate, or doubt," among other reasons.). *See also Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (holding that it is "error to allow expert

Accordingly, the testimony of Najolia relative to the legal conclusions of (1) whether BRPD officers had probable cause to arrest Plaintiff, including whether Plaintiff in fact violated La. R.S. § 14:97 (or other statute), and (2) the reasonableness of the BRPD officers' actions in arresting Plaintiff, including whether the force use was excessive or necessary, will not reliably assist the jury in resolving these contested issues of law and fact in this case and will be excluded.[47] Further, although no motion is before the Court,[48] Plaintiff's expert, Dr. Kraska's opinions on these issues will also be excluded for the same reasons.[49] These opinions will not assist the trier of

---

testimony on whether an officer used unreasonable force," and affirming district court's exclusion on summary judgment of plaintiff's expert's report opining that the officer's "use of deadly force…was unnecessary and objectively unreasonable and…violated well-established law enforcement use of force training and standards and was a greater level of force than any other reasonable officer would have used under the same or similar circumstances…"); *U.S. v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (finding that district court erred by admitting an officer's testimony about the reasonableness of another officer's use of force [*i.e.*, shooting] because "Rule 704(a) does not allow a witness to give legal conclusions" and "[r]easonableness [of an officer's use of force] under the Fourth Amendment or Due Process Clause is a legal conclusion." (internal citations omitted)); *Lehman v. Leichliter*, No. 03-1432, 2004 WL 5482307, at *2-4 (W.D. La. Nov. 30, 2004) (restricting experts' testimony to be offered at trial after finding that expert testimony on whether an officer's use of force was "objectively reasonable under the totality of the circumstances will not provide meaningful assistance to the jury" because (1) "[a] jury is fully capable of considering the circumstances and making a determination as to whether the use of force was reasonable under the circumstances" and (2) "[t]here is a real danger that the jury could end up believing that the ultimate issues before it are what the expert says they are."); *Tolan v. City of Bellaire*, No. 09-1324, 2015 WL 12765413, at *3 (S.D. Tex. Aug. 28, 2015) ("Clearly, expert opinions as to the reasonableness of a police officer's use of force are objectionable and inadmissible legal conclusions." (citations omitted)). *But cf. Hayward*, 2006 WL 8432349, at *2 (explaining (1) that "[u]nlike the issue of probable cause, expert witnesses may be used in excessive force cases" if such testimony "would assist the lay juror" and (2) that expert testimony in "bare hands" cases—as opposed to those involving "handcuffs, a gun, a slapjack, mace, or some other tool"—"might not be helpful" to a lay juror because "[m]ost individuals have been in a physical altercation at one point in their lives, be it through horseplay or something more serious," and permitting plaintiffs' expert to testify about whether excessive force was used against plaintiff, given that the "alleged excessive force in the case at bar [*i.e.*, the negligent use of handcuffs] involves more than the use of 'bare hands.'").

[47] *See Harris*, 2005 WL 6009992 (M.D. La. April 8, 2005) (disallowing testimony by Kerry Najolia "concerning the reasonableness of the actions of the police officer in making [an] arrest"); *Chauvin v. Sheriff Harry Lee of Jefferson Parish*, 2000 WL 1537988 (E.D. La. Oct. 16, 2000) (granting plaintiff's motion in limine "to exclude the testimony and report of purported expert Kerry Najolia" after defendants advised the court that they would not oppose the motion).

[48] *See Graham*, 288 F.Supp.3d at 729 n.9 ("As numerous courts have recognized, while no party has raised any *Daubert* challenges, the court has authority to raise its concerns *sua sponte* to fulfill its unique gatekeeping function and ensure the integrity of the judicial process." (citations omitted)).

[49] *See* R. Doc. 106-3. The Court has reviewed Dr. Kraska's report and, in many ways, it is the converse of Najolia's report. Dr. Kraska appears to adopt, *in toto*, Plaintiff's version of events, while discounting, without any basis, Defendants' version. After this, Dr. Kraska opines on ultimate factual and/or legal issues and offers legal conclusions. Specifically, he opines (1) that BRPD's "policy decisions, policy failures, and training failures resulted in the *unlawful arrest and use of excessive force* against [Plaintiff] on June 9, 2016 [sic]," (2) that "[t]he suspension of BRPD's use of force policy in the field, such that *protestors not showing resistance, such as [Plaintiff], were subjected to take-*

fact, as the jury will be more than capable of listening to witness testimony and making the necessary credibility determinations, reviewing the photographic and video evidence and assigning it the appropriate weight, and reaching its own conclusions regarding the ultimate issues in this case.

However, unlike the plaintiffs in the *Gage* and *Haynes* cases relied on by Plaintiff, Plaintiff here is not a *pro se* litigant, is represented by counsel, and has retained his own expert to offer opinion testimony at trial about various law enforcement issues. As such, the parties are reminded that "[w]hether an opinion can be viewed as a legal conclusion…depends in large part upon the question asked."[50] "Direct questions about the reasonableness of a defendant's actions may yield impermissible legal conclusion opinions, while hypothetical or abstract questions may not."[51] Thus, while both experts are precluded from offering legal conclusion opinions, it is nonetheless incumbent on "each side to contemporaneously object at trial to any questions that may elicit a legal conclusion opinion."

Notwithstanding the foregoing, the Court finds from a review of Najolia's report, as well as Dr. Kraska's report, that the parties intend to elicit testimony from these witnesses regarding

---

down and other uses of force…," (3) that BRPD's "failures of training and supervision resulted in a mass arrest which included *the false arrest and use of excessive force against [Plaintiff]*," (4) that "[i]t is unlikely that [Plaintiff] was targeted and arrested for obstructing a roadway," as the "video evidence," while "not definitive," shows that Plaintiff "was standing next to the road, not in the road, during the protest and when his arrest was executed," (5) that *Plaintiff's "arrest was not based on probable cause from observations of [Plaintiff ] breaking the law*," (6) that, in violation of BRPD policies, BRPD officers "approached [Plaintiff] from behind, *pulled him to the ground violently*, and then four other officers…joined a 'scrum' *where a knee was pressed into [Plaintiff's] neck*…violat[ing] nearly all major aspects of BRPD's own use-of-force polices," and (7) that BRPD "arrest[ed] [Plaintiff] *without probable cause* for violating La. R.S. 14:97[.]" *Id*. at pp. 1-7 (emphasis added). Although opposite of Najolia's conclusions, Dr. Kraska's conclusions suffer from the same infirmities. Namely, some of Dr. Kraska's opinions are legal conclusions involving ultimate issues in the case and present the type of danger that the gatekeeping function of *Daubert* is intended to alleviate, *i.e.*, the danger that the purported expert testimony will receive unwarranted weight and will encourage the fact-finder to give more weight to one side's contention than is warranted. Thus, like Najolia, Dr. Kraska is precluded from offering any testimony about the existence of probable cause and the reasonableness of the BRPD officer's actions in arresting Plaintiff, including whether excessive force was used.

[50] *Tolan*, at *3 (citations omitted).

[51] *Id*. (citations omitted).

other relevant issues that will assist the jury. For example, based on his experience and training, Najolia offers opinions on BRPD and POST training requirements, including whether certain officers were current in their training; the "POST PEDA Principal Model," "threat assessment" and "incident classification," in general and as related to the July 2016 protests; BRPD's decision to respond to the July 2016 protest by employing the Mobile Field Force, including whether such decision is based on the "Miami Model" and/or represents "contemporary best practices for crowd control"; whether BRPD's training, procedures, protocols, and decisions "reflect[] contemporary law enforcement techniques consistent with other law enforcements agencies" and/or are "best practices," and the use of force, in general; among other things.[52] Likewise, Dr. Kraska, based on his qualifications, offers opinions on the classification and "categorization of public assembly," including the July 2016 protests; BRPD's decisions about how respond to the protests by using the Mobile Field Force and "mass arrest," including the effects of same on public protests and protestors, in general and as related to the July 2016 protest; whether BRPD's decisions, including the use of the Mobile Field Force, represent "police-best practices"; what "contempt of cop" is; the use of a "boiler plate" affidavit of probable cause; and the use of force in general, among other things. The Court finds that Najolia and Dr. Kraska are qualified to offer these opinions, and these opinions are sufficiently reliable under *Daubert*, relevant, and will assist the jury in deciding the ultimate issues in this case. Accordingly, to the extent not excluded above, the witnesses' testimony regarding these other relevant issues, as expressed in their reports, shall be allowed at trial.

### III.    CONCLUSION

Accordingly, based on the forgoing,

---

[52] R. Doc. 106-2, pp. 10-13.

**IT IS ORDERED** that the Motion to Exclude Testimony and Report of Defendants' Expert Witness,[53] filed by Plaintiff, is **GRANTED IN PART AND DENIED IN PART**, such that any testimony by Defendants' expert, Kerry Najolia, shall be excluded as to (1) whether probable cause existed to arrest Plaintiff on July 9, 2016 and (2) the purported "reasonableness" of certain BRPD officers' actions in utilizing force to arrest Plaintiff on July 9, 2016, but shall be allowed relative to the other topics as stated in his report.

**IT IS FURTHER ORDERED** *sua sponte* that any testimony by Plaintiff's expert, Dr. Peter Kraska, shall be excluded as to (1) whether probable cause existed to arrest Plaintiff on July 9, 2016 and (2) the purported "reasonableness" of certain BRPD officers' actions in utilizing force to arrest Plaintiff on July 9, 2016, but shall be allowed relative to the other topics as stated in his report.

Signed in Baton Rouge, Louisiana, on November 30, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[53] R. Doc. 106.